UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL BERTHELOT § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-10-0018 |
| § | | |
| AMERICAN POSTAL WORKERS § | | |
| UNION, LOCAL 185, *et al.*, § | | |
| Defendants. § | | |

## **MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff's Motion for Leave to Add Additional Parties ("Motion") [Doc. # 29]. Defendant John E. Potter, in his official capacity as Postmaster General, United States Postal Service (the "USPS" or the "Postal Service") filed a Response in Opposition [Doc. # 30], to which Plaintiff filed a Reply [Doc. # 33], and the USPS filed a Sur-Reply [Doc. # 34]. Defendant American Postal Workers Union, Local 185 (the "Union") also filed a Response in Opposition [Doc. # 31], to which Plaintiff filed a Reply [Doc. # 32], and the Union filed a Sur-Reply [Doc. # 35]. Plaintiff additionally filed a Sur-Reply [Doc. # 36], responding to both the Postal Service's and the Union's Sur-Replies. Having reviewed the full record in this case and having applied relevant legal authorities, the Court **denies** the Motion.

## **I.    BACKGROUND**

Plaintiff brings this "hybrid action" against the USPS and the Union (collectively, "Defendants") pursuant to section 1208(b) of the Postal Re-Organization Act, 39 U.S.C. § 1208(b).[1] Plaintiff filed an original complaint on January 4, 2010 [Doc. # 1] asserting that the USPS violated the Collective Bargaining Agreement (the "CBA") when it allegedly (1) eliminated Plaintiff's position at Cypress Post Office; (2) pressured him to do work that violated his medical restrictions; (3) rescinded

---

[1] The United States Supreme Court has defined "hybrid" suits, as follows:

> [H]ybrid suits formally comprise two causes of action. First the employee alleges that the employer violated [section 301] by breaching the collective bargaining agreement. Second, the employee claims that the union breached its duty of fair representation, which the Court has implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration proceedings.

*Reed v. United Transp. Union*, 488 U.S. 319, 328 (1989). The claims against the union and employer are "inextricably interdependent," *see DelCostello*, 462 U.S. at 164 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S 56, 66-67 (1981) (Stewart, J., concurring in the judgment)), and the union's breach of its duty of fair representation is an "indispensable predicate" for maintaining a section 301 action against an employer, *see Thomas v. LTV Corp.*, 39 F.3d 611, 621-22 (5th Cir. 1994).

Section 1208(b) is the Postal Service's analog to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides an employee with a federal cause of action against his employer for breach of a collective bargaining agreement ("CBA"). A claim against the Postal Service for violation of a CBA is properly brought pursuant to 39 U.S.C. § 1208(b). Section 301 precedent is applicable to section 1208(b) claims. *See Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 232 n.2 (1983). Ordinarily, an employee must attempt to exhaust all other remedies provided for in the collective bargaining agreement. However, where the union has breached its duty of fair representation to the employee, the "employee may bring suit against both the employer and the union notwithstanding the outcome or finality of the grievance or arbitration." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983) (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)).

accommodations that were provided for his injury; and (4) eliminated higher grade pay for tasks associated with his position.[2] Plaintiff further alleges that he brought these matters to the Union's attention in July and August of 2009, that the Union filed a grievance on or about September 15, 2009, and that the Union mishandled this grievance.[3] Plaintiff then filed an amended complaint on June 6, 2010 [Doc. # 18], in which he repeats the assertions in his original complaint and alleges that the USPS committed further breaches of the CBA.[4] Plaintiff does not allege in his amended complaint that he asked the Union to take action regarding these additional breaches.[5]

On August 11, 2010, Plaintiff filed the instant "Motion for Leave to Add Additional Parties" [Doc. # 29] ("Motion"). In his Motion, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23:

> . . . those classified in permanent rehabilitation status as a result of an on-the-job-injury with the United States Postal Service--whose employment is covered by [sic] 2006-2010 collective bargaining agreement and falling under the auspices of Local 185. This includes rehabilitation workers who were reassigned from the Houston Postal District or other areas that fall within Local 185 jurisdiction and employee [sic] who are no longer employed with the U.S. Postal Service, including those

---

[2] *See* Plaintiff's Original Complaint [Doc. #1], ¶¶ III.A.3-III.A.5.

[3] *See id.*, ¶¶ III.B.1-III.B.5.

[4] *See* Plaintiff's First Amended Complaint [Doc. # 18] ("Amended Complaint"), ¶¶ IV.A.6-IV.A.12 (detailing USPS's alleged further breaches of the CBA from January, 2010 through April, 2010); *see also id.*, ¶¶ IV.B-IV.C (same).

[5] *See id.*, ¶¶ V.A.1-V.A.4, V.B.1 (detailing Plaintiff's allegations against the Union).

employees who have either applied for or have received disability retirement benefits. The class should be limited to those rehabilitation employees whose terms and conditions of employment of employment [sic], as protected by the CBA, from January 1, 2009 until the present (or implementation of the NRP or a similar policy -- whichever is earlier.).[6]

Alternatively, Plaintiff seeks to add the following unenumerated parties pursuant to Federal Rule of Civil Procedure 20: "the employees listed or discussed [in this Motion], including but not limited to, the Houston GPO limited duty employees who were excessed from their positions."[7]

The parties Plaintiff seeks to certify as a class (or alternatively to add as parties) appear to fall into three categories: (1) the named Plaintiff himself, whose allegations against the USPS and the Union are summarized above,[8] (2) employees who were "excessed" (*i.e.*, reassigned) from the Houston Processing and Distribution Center ("Houston GPO") between March and April of 2009 (the "excessed Houston GPO employees"),[9] and (3) Mr. Anthony Ulmer, who alleges that the USPS did not obtain

---

[6] Plaintiff's Motion [Doc. # 29], at 34.

[7] *See id.* at 39.

[8] *See id.* at 19-20.

[9] *See id.* at 20-22. According to the USPS, "[e]xcessing occurs when there is overstaffing in certain areas, and employees may be reassigned in accordance with Article 12 of the [CBA]." *See* Declaration of Diana L. Owens [Doc. # 30-2] ("Owens Decl."), ¶ 2. According to both the USPS and the Union, excessing of the clerk craft occurred in Houston in April, 2009. *Id.*, ¶¶ 4-7; Declaration of Princella Edwards Vogel [Doc # 31-1] ("Vogel Decl."), ¶ 2.

(continued...)

medical treatment for an injury he obtained on the job and then subsequently altered his injury documents, and that the Union failed to adequately address these matters.[10]

The Court now turns to Plaintiff's Motion, which has been fully briefed and is ripe for decision.

## II.  RULE 23 CLASS CERTIFICATION

### A.  Rule 23(a) of the Federal Rules of Civil Procedure

Plaintiffs seeking class certification have the burden to establish each of the four requirements of Rule 23(a), specifically numerosity, commonality, typicality, and adequacy of representation.  *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318,

---

[9](...continued)

> In his Motion, Plaintiff claims that approximately 50 rehabilitation employees were excessed from Houston GPO, but Plaintiff presents no supporting documentation. *See* Doc. # 29, at 20.  Plaintiff cites to Exh. D, which he asserts is an "Owen Email With Attached Employee List [3-13-09]," but no such document is in the record.  Plaintiff also identifies ten employees who were excessed from Houston GPO:  Lien Tran, Hazel Williams, Deborah Lloyd, Maureen Jonelunas, John Maye, Leta Pierre, Carol Struble, Sharon Wigfall, Nathan Campbell, and Reuben Williams.  *See* Doc. # 29, at 20-22, 29.  This may not be an exhaustive list as Plaintiff states in his Motion "it would be impractical to list each employee by name as the Houston GPO employees . . . continue to contact Plaintiff's counsel."  *Id.* at 39.

> According the both the USPS and the Union, this excessing was based on seniority and applied to all employees regardless of whether they were rehabilitation employees working in modified assignments.  Owens Decl., ¶¶ 2-7; Vogel Decl., ¶¶ 2-6.

[10]  *See id.* at 22-23.  Mr. Ulmer's claims are unique to himself and do not relate to Plaintiff's claims or the claims of the excessed Houston GPO employees.  The addition of Mr. Ulmer in no way helps Plaintiff to meet his burden to certify a class under Federal Rule of Civil Procedure 23.

325 (5th Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)). Defendants challenge Plaintiff's ability to satisfy each of those requirements with respect to the proposed class.

*Numerosity.*– Rule 23(a) first requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiff alleges that the total number of class members would likely be between 150 and 250, based on information that suggests that 175 clerks were excessed from the Houston GPO.[11] The Union argues that this number is overstated because its efforts have resulted in bringing 114 clerks back to their original positions.[12] For the reasons discussed below in connection with Rule 23(a)'s commonality and typicality requirements, Plaintiff's claims are unique to himself, and the excessed Houston GPO employees would not be included in any class with Plaintiff. Therefore, the Court concludes that Plaintiff has not met his burden to show numerosity with regard to his proposed class.

*Commonality.*– Rule 23(a) also requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is

---

[11] *See* Doc. # 29, at 33 (citing Notice of Intent to Issue Decision Without a Hearing [Doc. # 29-7], at 2 (discussing excessing of 175 clerks from Houston District)). Plaintiff does not explain and it is not apparent from the record why this figure is different from Plaintiff's argument, at *id.* at 20, where he mentions that 50 employees were excessed from the Houston GPO.

[12] *See* Doc. # 31, at 10 (citing Vogel Decl., ¶ 6).

satisfied where the resolution of at least one issue will affect all or a significant number of putative class members. *See Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997); *accord James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Plaintiff has failed to meet his burden to identify any such issue.

Plaintiff initially argues in his Motion that his claims have issues in common with the excessed Houston GPO employees.[13] In discussing commonality, he argues that "there are unfair labor practices under 29 U.S.C. § 185(a)," specifically, "breach of the CBA through excessing of rehabilitation employees (and other adverse actions [a]ffecting terms and conditions of employment) along with the breach of the duty of fair representation."[14] The Court is not persuaded. First, Plaintiff was not excessed, *i.e.*, reassigned, in April of 2009.[15] Second, the Postal Service and Union present clear evidence through declarations of their representatives who were involved with the Houston GPO excessing that the Houston GPO employees were excessed based on seniority.[16] Plaintiff has not produced probative evidence sufficient to raise a genuine

---

[13]  *See* Doc. # 29, at 20-22.

[14]  *See id.* at 35.

[15]  *See* Owens Decl., ¶ 8. Although Plaintiff was notified in early 2010 of proposed excessing, that notice was rescinded when it was determined that excessing was not necessary at Cypress Post Office. *Id.*, ¶¶ 8-9.

[16]  *See* Owens Decl., ¶¶ 2-7; Vogel Decl., ¶¶ 2-6.

fact issue on commonality with respect to the excessed Houston GPO employees.[17]

Plaintiff also attempts to suggest there is commonality by linking the 2009 Houston excessing decisions and the treatment of Plaintiff personally to the Postal Service's National Reassessment Process (the "NRP"), a nationwide initiative, through which the USPS seeks to review all rehabilitation assignments to ensure they contain only necessary tasks.[18] However, a USPS witness, Diana L. Owens, avers on personal knowledge that "[t]he excessing process is separate and distinct from the [NRP]."[19] Plaintiff has not adduced any admissible evidence otherwise. Plaintiff's speculation and conclusory assertions to the contrary are not factual evidence to support his position. Accordingly, Plaintiff has not shown common questions of law or fact exist between his circumstances and the excessed Houston GPO employees through the NRP. Plaintiff thus has failed to meet his burden to show commonality

---

[17]     Plaintiff relies on affidavits from excessed employees who assert that only other rehabilitation employees attended a meeting in "the BPI room." However, there is no non-speculative evidence of any relationship between the meeting and the excessing decisions.

[18]     *See* Declaration of Benjamin Walker [Doc. # 30-3] ("Walker Decl."), ¶ 2. The NRP consists of three phases: a pre-implementation phase, which focuses on reviewing the records of employees with compensable on-the-job injuries and updating those records where necessary, and two implementation phases that seek "to match each employee with necessary work suitable to their medical restrictions." Doc. # 30, at 8; Walker Decl., ¶ 4.

[19]     Owens Decl., ¶ 11.

between himself and the excessed Houston GPO employees.[20]

In sum, Plaintiff has not met his Rule 23(a)(2) burden, which in and of itself is grounds for denial of his Motion. Additionally, Plaintiff fails to meet the other Rule 23(a) requirements.

***Typicality***.– Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James*, 254 F.3d at 571). Typicality requires that "the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571.

---

[20] Plaintiff has similarly failed to show commonality between himself and Mr. Ulmer. Plaintiff asserts that the USPS refused Mr. Ulmer medical treatment and altered his injury compensation documents. *See* Doc. # 29, at 22-23. Plaintiff makes no similar allegations on behalf of himself. *See* Amended Complaint [Doc. # 18]. In contrast, Plaintiff asserts that the Postal Service (1) eliminated Plaintiff's position at Cypress Post Office, (2) pressured him to do work that violated his medical restrictions; (3) rescinded accommodations that were provided for his injury; and (4) eliminated higher grade pay for tasks associated with his position. *See* Plaintiff's Original Complaint [Doc. #1], ¶¶ III.A.3-III.A.5. Plaintiff has not identified any common questions of law or fact between himself and Mr. Ulmer.

Plaintiff does not directly address typicality in his Motion.[21] Rather, in Plaintiff's Replies to the Postal Service's [Doc. # 33] and the Union's [Doc. # 32] responses to the Motion, Plaintiff argues that the typicality requirement is met by analogizing to an EEOC administrative decision involving implementation of the NRP in *McConnell v. USPS*, EEOC Appeal No. 07200080054 (January 14, 2010) (attached as Exhibit A to Plaintiff's Motion [Doc. # 29-2]).[22] *McConnell* is a Rehabilitation Act claim challenging the NRP. In *McConnell*, the EEOC upheld an administrative judge's decision to certify a class of "all permanent rehabilitation employees and limited duty employees at the agency who have been subjected to the NRP from May 5, 2006 to the present, allegedly in violation of the Rehabilitation Act of 1973."[23]

The *McConnell* ruling by the EEOC, an administrative agency, is not binding

---

[21] Plaintiff's discussion of the requirements of Rule 23 begins on page 33 of his Motion. *See* Doc. # 29, at 33. There are sections relating to other requirements of Rule 23, but not to Rule 23(a)(3). *Id.*

[22] *See* Doc. # 33, at 4 n.3; Doc. # 32, at 13-14.

[23] See Doc. # 29-2, at 10. The EEOC agreed with the administrative judge's determination that commonality and typicality existed because

> the class agent had shown that the agency had a nationwide practice of targeting employees in rehabilitation or limited-duty positions, adversely affecting their reasonable accommodations via the NRP. The AJ also noted that the specific alleged harm may be different for the various employees involved, but the common link was that all of these people were asserting that they were negatively affected by the NRP.

Doc. # 29-2, at 6.

on this Court.[24] But, in any event, that proceeding involves claims materially different from those asserted by Plaintiff personally and as defined by the class he proposes. *McConnell* is not a section 301 "hybrid" suit.[25] Therefore *McConnell*'s analysis of the class certification requirements is inapplicable to this case. Further, as indicated above, Plaintiff has failed to produce evidence showing that the NRP, the crux of the *McConnell* claims, is implicated in this suit. Neither Plaintiff in 2009 nor the Houston GPO employees excessed in 2009 have been to shown to have been reassigned under the NRP.[26] Indeed, Plaintiff's proposed class definition seems to exclude NRP-related decisions, as the class period ends upon "implementation of the NRP or a similar policy–whichever is earlier."[27]

---

[24] "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence . . . ." *DeCorte v. Jordan*, 497 F.3d 433, 440 (5th Cir. 2007) (quoting *McClure v. Mexia Indep. Scho. Dist.*, 750 F.2d 396, 400 (5th Cir.. 1985)).

[25] In a "hybrid" suit, the union's breach of its duty of fair representation owed to an employee is an "indispensable predicate" for a related claim against the employer. *See Thomas v. LTV Corp.*, 39 F.3d 611, 621-22 (5th Cir. 1994). *See supra* note 1 for a description of section 301 "hybrid" suits and the relationship of those types of claims to the § 1208 claims in the suit at bar.

[26] Plaintiff has similarly failed to provide evidence showing that Mr. Ulmer's claims are related to the NRP.

[27] Doc. # 29, at 34. Plaintiff's class definition is vague and imprecise, thus undermining Plaintiff's ability to satisfy the commonality, typicality and adequacy requirements. Furthermore, although Step 2 of the NRP was implemented against Plaintiff as of September 17, 2010, any claim pertaining to the 2010 decision is not properly before the Court, because the Union is currently pursuing a grievance for that matter on
(continued...)

In addition, Plaintiff's complaints are highly personalized. The Court accordingly concludes that significant factual and legal differences between Plaintiff's claim and proposed class members' claims defeat Plaintiff's effort to meet his burden to demonstrate that "his claims have the same essential characteristics of those of the putative class." *James*, 254 F.3d at 571. Plaintiff has failed to show that his claims are typical of those of the putative class.

*Adequacy*.– Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). Analysis of this requirement focuses on the competence of class counsel and on the class representative's willingness and ability to serve without any conflicts of interest between the class representative and the putative class members. *See Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to

---

[27](...continued)
behalf of Plaintiff. *See* Declaration of Deborah Henderson [Doc. # 34-1] ("Henderson Decl."), ¶ 3; Declaration of Tiffanie Brown [Doc. # 35-1] ("Brown Decl."), ¶¶ 9-11. There accordingly is no indication that the Union is failing to represent him or to otherwise meet its duties with respect to this incident, as required in this "hybrid" suit.

pursue the claims of the other class members." *Stirman*, 280 F.3d at 563 (internal quotation marks and citation omitted).

For the reasons discussed above, the Court finds that Plaintiff has not met his burden to demonstrate that his interests are sufficiently similar to those of the putative class. Plaintiff's complaints are highly personalized and have not been shown to be typical of other members of the putative class. Thus, Plaintiff has not shown he has the genuine incentive to pursue the claims of the other class members. The Court therefore concludes the Plaintiff has not shown he would adequately represent the class.

Because the Court finds that Plaintiff has not met his burden to demonstrate the Rule 23(a) requirements can be met, class treatment is denied.

### B.     Rule 23(b)

For the sake of completeness, the Court undertakes analysis of the Rule 23(b) factors. The Court concludes that class treatment is not warranted because the Rule 23(b) requirements are not met. "The district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). The party seeking class certification bears the burden of establishing that Rule 23(b)'s requirements have been met. *See Gene and Gene LLC*, 541 F.3d at 325. Plaintiff seeks certification under either Rule

23(b)(1), (2) or (3). For the reasons discussed below, the Court finds that Plaintiff has failed to meet his burden to demonstrate that the requirements of any subsection of Rule 23(b) have been met.

*Rule 23(b)(1)*.– A class action may be maintained under Rule 23(b)(1) if:

(1)  prosecuting separate actions by or against individual class members would create a risk of

> (A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests

FED. R. CIV. P. 23(b)(1).

Rule 23(b)(1)(A) focuses on whether individual actions would create "incompatible standards of conduct" for the party opposing the class. Plaintiff argues this Rule is met because "this has already happened without adjudication."[28] It appears that Plaintiff argues that incompatible standards of conduct have already arisen based on Plaintiff's allegations that "[t]he Postal Service removed Plaintiff from his modified assignment and crafted a job comprised of 'make up' work that bears no relation to the job title [while] several employees were removed from their modified

---

[28]  Doc. # 29, at 37.

jobs and offered full duty positions or full duty positions in other states."[29]  As discussed above, Plaintiff's alleged 2009 reassignment has not been shown to have been related to the Houston GPO excessing or the NRP.[30]  Also, Plaintiff's arguments suggest a fundamental misunderstanding of Rule 23(b)(1)(A). The fact that the Postal Service made varying employment decisions and the Union handled grievances differently for various employees indicates the highly individualized nature of these employment decisions, which center–at least in part–on each employee's own physical limitations.  Under such circumstances, inconsistent and varying adjudications by Courts' handling of different individuals' claims do not create "incompatible standards of conduct" as the phrase is used in Rule 23(b)(1)(A). Where an employer's treatment of different employees is inconsistent before adjudication, the Rule 23(b)(1)(A) standard is not implicated.

Moreover, Plaintiff has not demonstrated why different findings on liability and/or damages would not necessarily be explained by the different facts of the cases. The requirements of Rule 23(b)(1)(A) have not been met here.

---

[29]   *See id.*

[30]   *See supra* note 15 and accompanying text (demonstrating Plaintiff was not excessed); *see also supra* notes 26 and accompanying text (demonstrating Plaintiff was not subject to the NRP in 2009).

Rule 23(b)(1)(B) focuses on whether individual actions would prejudice other class members. *See* FED. R. CIV. P. 23(b)(1)(B) & Advisory Committee's Notes, 1966 Amendment (explaining common Rule 23(b)(1)(B) situations, *e.g.*, where individuals seek compensation from a single, common fund insufficient to settle all claims). Plaintiff cursorily argues that the requirements of this Rule are met because "this suit involves to a degree a challenge to a [sic] policies and practices of both Defendants."[31] The Court disagrees. Having the claims of Plaintiff, the excessed Houston GPO employees, and Mr. Ulmer proceed as individual actions would in no way prejudice the proposed class members, because each individual's claims are fact specific to their physical and other conditions as well as their job assignments. Plaintiff has failed to show that the requirements of Rule 23(b)(1)(B) are met.

***Rule 23(b)(2).*** – A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). In a class action brought pursuant to Rule 23(b)(2), "the injunctive or declaratory relief sought by the plaintiffs must predominate over claims for monetary relief." *Wilborn v. Wells Fargo Bank*, 609 F.3d 748, 757 (5th Cir. 2010) (citation omitted). Plaintiff has failed

---

[31] *Id.*

to specify in either his Complaint or his Motion what injunctive relief he seeks. He also has not demonstrated that equitable relief is the primary relief sought in this case.[32] Plaintiff has failed to meet his burden to show that the requirements of Rule 23(b)(2) have been met.

***Rule 23(b)(3).*** – A class action may be maintained under Rule 23(b)(3) if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

When determining whether Plaintiffs have satisfied the predominance requirement, the Court considers "how a trial on the merits would be conducted if a class were certified." *Gene and Gene LLC*, 541 F.3d at 326 (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* Rule 23(b)(3)'s predominance requirement is "far more demanding" than

---

[32] *See* Amended Complaint, ¶ VI.2 (stating only "Plaintiff prays for equitable and injunctive relief as allowed by law"); Doc. # 29 (failing to articulate any injunctive or declaratory relief sought on behalf of the putative class).

the commonality requirement of Rule 23(a).  *Id.* (citing *Amchem Prods.*, 521 U.S. at 623-24).

Apart from merely reciting the factors to be considered under Rule 23(b)(3), Plaintiff's only argument as to predominance is that "the [sic] each member would focus upon the NRP and similar policies in the same manner as the McConnell administrative class action."  As stated above, Plaintiff has not shown that the excessed Houston GPO employees were reassigned pursuant to the NRP.  Nor has Plaintiff established that his NRP claim is properly before this Court.[33]  Additionally, there are significant differences between the cause of action maintained in this suit (a "hybrid" suit) and that in *McConnell* (a Rehabilitation Act claim), namely, that a "hybrid" suit requires a finding that the Union breached its duty of fair representation as to each employee before that employee may maintain an action against the employer.  *See Thomas v. LTV Corp.*, 39 F.3d 611, 621-22 (5th Cir. 1994).  The outcome of Plaintiff's case thus will thus center on whether the Union mishandled *his* September 2009 grievance and whether the USPS committed various breaches of the CBA in modifying *his* work assignment.  These claims are unique to Plaintiff and will require a highly individualized assessment by the fact finder.  For these reasons, as well as those set forth above as to commonality, the Court finds that Plaintiff has

---

[33]     Mr. Ulmer's allegations similarly do not concern the NRP.

failed to demonstrate that common questions predominate in this case. Therefore, the requirements of Rule 23(b)(3) have not been met.

### III. RULE 20 JOINDER

Under Federal Rule of Civil Procedure 20(a)(1), plaintiffs may join a case when "(1) their claims arise out of the 'same transaction or occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *see also* Fed. R. Civ. P. 20(a)(1). Even where plaintiffs satisfy this two-pronged test, district courts have the discretion to deny joinder "in the interest of avoiding prejudice and delay, . . . ensuring judicial economy, . . . or safeguarding principles of fundamental fairness." *Id.* (citations omitted).

As explained above, the Court finds that the claims of Plaintiff, Mr. Ulmer, and the excessed Houston GPO employees do not arise out of the "'same transaction or occurrence, or series of transactions or occurrences.'" Plaintiff has failed to establish any meaningful logical relationship linking these three groups of claims. Furthermore, for the reasons the Court did not find commonality present here under Rule 23(a)(2), the Court cannot identify any "one common question of law or fact linking all claims" in this case.

Even if Plaintiff could satisfy the two-pronged test under Rule 20(a)(1), the Court concludes that joinder would not be warranted because judicial economy would not be served by adding those employees listed or discussed in Plaintiff's Motion (as well as those as yet unnamed plaintiffs who continue to contact Plaintiff's counsel) in order to adjudicate these highly individualized claims on any kind of joint basis. Accordingly, the Court finds that Rule 20 joinder is not warranted in this case.

## IV. CONCLUSION AND ORDER

Plaintiff has failed to satisfy his burden to establish his proposed class meets the requirements under Rule 23. Plaintiff additionally has not met the standards of Rule 20 to warrant joinder of other individuals. As a result, it is hereby

**ORDERED** that the Motion for Leave To Add Additional Parties [Doc. # 29] is **DENIED**.

SIGNED at Houston, Texas, this **8th** day of **November, 2010**.

_____
Nancy F. Atlas
United States District Judge