**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DANIEL BERTHELOT. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-0018 |
| | § | |
| AMERICAN POSTAL WORKERS UNION, LOCAL 185 and PATRICK R. DONAHOE, in his official capacity as POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | § § § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this suit under the Postal Reorganization Act, Defendants American Postal Workers Union Local 185 ("Union") and Patrick R. Donahoe, in his official capacity as Postmaster General of the United States Postal Service ("USPS"), each have filed dispositive motions.[1] Plaintiff Daniel Berthelot has responded, Defendants have replied, and Plaintiff has filed a "rebuttal."[2] The motions are ripe for decision.

---

[1] Motion to Dismiss or Motion for Judgment on the Pleadings or Motion for Summary Judgment of Defendant American Postal Workers Union Local 185, with Authority [Doc. # 59]; Defendant Postmaster General's Motion to Dismiss or Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment [Doc. # 58].

[2] Plaintiff also has filed an Amended Motion for Leave to File Rebuttal to Replies of (continued...)

Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendants' dispositive motions should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiff Daniel Berthelot was, at times relevant to this suit, an employee of the USPS. Berthelot was classified as a "permanent rehabilitation employee" as a result of physical disabilities arising from an on-the-job injury in 1998. Effective April 30, 2007, USPS offered Berthelot a position as an Edit Book Delivery Growth Coordinator ("EBDGC") at Cypress Station,[3] a position that was tailored to accommodate Berthelot's medical restrictions.

Berthelot states that, during the summer of 2009, his job duties were "gradually taken away" and "reassigned to part time casual employees," and that he in turn "was assigned various clerk duties that violated [his] medical restrictions."[4] Berthelot further states that he "[e]ventually" was "effectively removed" from the EBDGC

---

2 (...continued)
Defendants American Postal Workers Union Local 185 and Postmaster General to Plaintiff's Response to Motions for Summary Judgment [Doc. # 73], which motion will be granted.

3 Exhibit E to Doc. # 68.

4 Declaration of Daniel Berthelot in Support of Responses to Dispositive Motions Filed by Defendants (Exhibit A to Doc. # 68) ("Berthelot Declaration"), at 1, ¶ 3.

position.[5]

Berthelot claims that he attempted to grieve his employment issues through his Union, but was told by the Union Steward for Local 185 that "nothing could be done."[6] Subsequently, on August 5, 2009, counsel for Berthelot sent a letter to Princella Vogel, the President of Local 185.[7] The Vogel Letter raised several issues:

> Management wishes to re-assign Mr. Berthelot to postal clerk duties. Of greater concern, he cannot perform all of the functions of a postal clerk because it would violate his medical restrictions. Moreover, Management has refused to accommodate his medical appointments. Also, it has refused to pay him for tasks associated with a higher grade.[8]

The Union has admitted, subject to evidentiary objections, that Berthelot's counsel sent the Vogel Letter.[9] However, Berthelot states that he never received any response to the letter nor any requests for further information.

---

5 *Id*.

6 *Id*. at 2, ¶ 5.

7 Letter from J. Mallory to P. Vogel, dated August 5, 2009 (Exhibit J to Doc. # 68) ("Vogel Letter").

8 Vogel Letter, at 1.

9 Union's Objections and Responses to Plaintiff's Requests for Admissions (Exhibit C to Doc. # 68), Request for Admission No. 3. In response to Plaintiff's request that the Union admit that Plaintiff's counsel "sent correspondence addressed to Princella Vogel regarding Daniel Berthelot's employment at the Cypress Post Office," the Union answered "Admit" subject to two evidentiary objections: first, the request was not reasonably limited in time and sought information beyond the 180 day limitation period; second, the request sought information that was not relevant or material to any issue in the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

On September 19, 2009, the Union filed a grievance on Berthelot's behalf. The grievance form identified the issue as "higher level pay," and stated that Berthelot became aggrieved in August 2009 when management "ceased paying him Level 17 pay" to perform EBDBC job duties.[10] The grievance did not address Berthelot's other complaints listed in the Vogel Letter, in particular, his complaints that his reassignment violated his medical restrictions and that his employer had refused to accommodate his medical appointments.

In response to Berthelot's allegations in this suit, the Union has proffered a declaration from Rowena Marable, who was Steward of Local 185 in September 2009. Marable states that Berthelot asked her to file a grievance on his behalf in September 2009 based on the issue regarding higher pay, and that she understood the "sole focus" of his grievance to be that he was no longer receiving Level 17 pay for job functions that had been taken away from him.[11] Marable further states that she asked Berthelot for a written statement explaining his complaint with any available supporting documents. Marable adds that Berthelot never provided such a statement, and that she

---

[10] Grievance G091827, dated September 19, 2009 (Exhibit G to Doc. # 68) ("2009 Grievance"). The Grievance lists the authorized Union representative as Princilla Vogel, and the Steward as Rowena Marable.

[11] Declaration of Rowena Marable (Exhibit B to Doc. # 59) ("Marable Declaration"), at 1, ¶¶ 2-3.

proceeded with the grievance based only on the Level 17 pay issue.[12] When the grievance was denied, Marable appealed the grievance on Berthelot's behalf. She states that she again requested a written statement or supporting documents from Berthelot, but received nothing from him.[13]

Berthelot's declaration squarely disputes Marable's statements regarding the processing of his grievance:

> I never heard a response from the Union despite several requests for a status. I never received a request for further information from the Union, including the union steward. If information would have been requested, I would have provided it.[14]

Berthelot also alleges that he eventually became aware "through collateral sources" that his grievance had been resolved.[15] Marable states that, at a meeting on November 17, 2009, "the matter was resolved by agreement that there was no violation of the Collective Bargaining Agreement," because Level 17 pay is beyond the scope of the CBA.[16]

Plaintiff filed suit in this Court on January 4, 2010. He seeks compensatory and

---

12 *Id*. at 1-2, ¶ 4.

13 *Id*. at 2, ¶¶ 5-7.

14 Berthelot Declaration, at 2, ¶ 5.

15 *Id*.

16 Marable Declaration, at 2, ¶ 8.

punitive damages of "at least $250,000," in addition to attorneys' fees, costs, and interest.[17]

On September 17, 2010, Berthelot was removed from USPS employment on the grounds that no medically suitable work was available for him.[18] The Union immediately grieved Berthelot's removal.[19] The grievance denial was appealed to Step 3 on November 1, 2010, and apparently still is pending.[20]

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[21] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

17 Second Amended Complaint [Doc. # 38-1].

18 Berthelot Declaration, at 2, ¶ 7; Declaration of Gary Glazebrook (Exhibit A to Doc. # 59) ("Glazebrook Declaration"), at 3, ¶ 11.

19 Grievance G10-1674, dated September 17, 2010 (Exhibit 4 to Glazebrook Declaration) ("2010 Grievance").

20 *Id*.

21 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

any material fact and the movant is entitled to judgment as a matter of law."[22]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[23] The moving party, however, need not negate the elements of the non-movant's case.[24] The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[25]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[26] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27]

In deciding whether a genuine and material fact issue has been created, the facts

---

22 FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

23 *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

24 *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

25 *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

26 *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

27 *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[28] However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[29] The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[30] Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[31] Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[32] In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[33]

Affidavits cannot preclude summary judgment unless they contain competent

---

28 *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

29 *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)).

30 *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

31 *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

32 *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

33 *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

and otherwise admissible evidence.[34] A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[35]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[36]

## III. ANALYSIS

This is a "hybrid action" against the USPS and the Union under Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b).[37] Plaintiff brings two claims:

---

34 *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

35 *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

36 *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

37 *See McNair v. U.S. Postal Serv*, 768 F.2d 730, 735 (5th Cir. 1985) (the Labor Management Relations Act ("LMRA") , 29 U.S.C. §§ 141 *et seq.*, is made applicable to the USPS by the Postal Reorganization Act, 39 U.S.C. § 1208(b), which gives federal courts jurisdiction over disputes arising under collective bargaining

(continued...)

first, that the USPS breached the relevant collective bargaining agreement ("CBA"); and second, that the Union breached its duty of fair representation.

The courts have held that, if a plaintiff cannot maintain a cause of action against his Union for breach of the duty of fair representation, the claim against the employer necessarily fails. The two components of the "hybrid" action, while separate causes, are "inextricably interdependent."[38] A breach by the union of the duty of fair representation is an "indispensable predicate" for a plaintiff's claim against the employer for breach of the collective bargaining agreement.[39] Therefore, the Court turns to Berthelot's claim against the Union.

In order to make a claim for breach of the duty of fair representation, Berthelot must show that the Union's actions toward him were arbitrary, discriminatory, or in

37 (...continued) agreements executed by USPS; Section 1208(b) is the "analogue" of section 301(a) of the LMRA, 29 U.S.C. § 185(a)).

38 *Williams v. AT&T Inc.*, 356 F. App'x 761, 768 (5th Cir. 2009) (citing *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61-62 (1981); *Landry v. The Copper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 850 (5th Cir. 1989) (citing *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)).

39 *Williams*, 356 F. App'x at 768 (citing *United Parcel*, 451 U.S. at 62, *Thomas v. LTV Corp.*, 39 F.3d 611, 621-22 (5th Cir. 1994)); *Lee v. Cytec Industries, Inc*, 460 F.3d 673, 679 (5th Cir. 2006); *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 403 (5th Cir. 2000); *Landry*, 880 F.2d at 850-51.

bad faith.[40] Unions have considerable discretion in processing grievances, even those grievances with merit.[41] A union member does not have an absolute right to have his grievance taken through all stages of the grievance procedure.[42] Simple negligence by the union, or a mistake in judgment, are insufficient to show that the union breached its duty of fair representation.[43]

However, a union may not arbitrarily ignore, or refuse without reason to investigate, a member's grievance:

> [A] union may not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." [*Vaca*, 386 U.S. at 191.] Thus, the duty of fair representation imposes an obligation for a union to investigate a grievance in good faith. *Abilene Sheet Metal, Inc. v. NLRB*, 619 F.2d 332, 347 (5th Cir. 1980). A union also has an obligation to prosecute a grievance "with reasonable diligence unless it decided in good faith that the grievance lacked merit or for some other reason should not be pursued." *Hammons v. Adams*, 783 F.2d 597, 602 (5th Cir. 1986).[44]

"It is beyond doubt that the duty of fair representation includes an obligation to

---

40 *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Williams*, 356 F. App'x at 768; *Landry*, 880 F.2d at 852.

41 *Vaca*, 386 U.S. at 191; *Landry*, 880 F.2d at 852; *Turner v. Air Transport Dispatchers Assoc.*, 468 F.2d 297, 299 (5th Cir. 1972).

42 *Vaca*, 386 U.S. at 191; *Landry*, 880 F.2d at 852.

43 *Landry*, 880 F.2d at 852.

44 *Landry*, 880 F.2d at 852.

investigate and to ascertain the merit of employee grievances."[45]

In this case, Berthelot argues that the Union totally and inexplicably failed to investigate or prosecute his grievance regarding two issues: his complaints (1) that his reassignment violated his medical restrictions and (2) that his employer had refused to accommodate his medical appointments. Through the declaration of Marable, the local Union steward, the Union establishes that Marable filed a grievance regarding only Berthelot's pay issues. She states that she was only aware of the pay issue and was unaware he had any other complaints. She further states that, although she asked Berthelot for a written statement setting forth his complaints, he did not comply with the request. Berthelot's declaration raises a fact issue about the Union's communications with him, stating he never received any response concerning his request that it file a grievance on all three issues.[46]

Plaintiff also has presented the Vogel Letter, which was sent on his behalf to the Union weeks before the 2009 Grievance was filed, and which sets forth all three

---

45 *Turner v. Air Transport Dispatchers' Ass'n*, 468 F.2d 297, 299-30 (5th Cir. 1972) (citing *Vaca*, 386 U.S. at 191; *DeArroyo v. Sindicato de Trabajadores Packing, AFL-CIO*, 425 F.2d 281, 284 (1st Cir.1970); *Local Union 12, United Rubber, C. L. & P. Workers of America, AFL-CIO v. NLRB*, 368 F.2d 12, 17-18 (5th Cir.1966)). *See Hammons*, 783 F.2d at 602 (plaintiffs made prima facie case regarding union's breach of the duty of fair representation with evidence that the union failed to make the slightest effort to represent them at their grievance hearing).

46 Berthelot Declaration, at 2, ¶ 5.

of his complaints. This letter raises another fact question regarding the Union's awareness of Berthelot's complaints other than the pay issue. Despite Plaintiff's argument that two of the three complaints in the Vogel Letter were arbitrarily ignored, Defendants nowhere address the letter. Because there is a factual dispute about whether the Union was arbitrary in failing to address two of Berthelot's issues, summary judgment is denied on whether the Union acted arbitrarily.

However, there are two other possible bases for liability under *Vaca*: discrimination and bad faith. Plaintiff has failed to demonstrate a genuine issue of material fact on these issues. Both discrimination and bad faith require evidence regarding the subjective motivation of the union officials:

> While the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of discrimination and bad faith must focus on the subjective motivation of the union officials.[47]

To show discrimination, Berthelot must show "'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'"[48] To show

---

47 *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 658 (4th Cir. 2002). *See Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir. 1997); *Gerhardt v. Air Transport Local 557*, 2011 WL 666500, at *2 n. 4 (S. D. Tex. Feb. 14, 2011) (Harmon, J.).

48 *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); citing *Vaca*, 386 U.S. at 177). *See Spellacy v. Airline Pilots Association-International*, 156 F.3d 120, 130 (2d (continued...)

that the Union acted in bad faith, Berthelot must show "'substantial evidence of fraud, deceitful action or dishonest conduct.'"[49] Because Berthelot has presented no competent evidence as to the subjective motives of Union officials,[50] summary judgment is appropriate on the issues of discrimination and bad faith.

The parties have not briefed the other component of this hybrid action, *i.e.*, Berthelot's claim against USPS for breach of the CBA, and the Court does not reach that issue.[51]

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Postmaster General's Motion to Dismiss or Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment [Doc. # 58] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment

---

48 (...continued)
Cir. 1998) (requiring evidence of animus on part of union officials to make out claim of breach of duty of fair representation based on discrimination).

49 *Beck*, 506 F.3d at 880 (quoting *Lockridge*, 403 U.S. at 299).

50 *Am. Eagle Airlines*, 343 F.3d at 405 (nonmoving party must present specific facts which show the existence of a genuine issue concerning every essential component of its case); *Little*, 37 F.3d at 1075 (in the absence of proof, the court will not assume that the non-movant could or would prove the necessary facts).

51 Such claim would necessarily fail if Berthelot's claim against the Union fails, because the breach of the duty of fair representation is an indispensable element of the hybrid cause of action. *Williams*, 356 F. App'x at 768; *Landry*, 880 F.2d at 850-51.

is **denied** on the arbitrariness issue and **granted** on the discrimination and bad faith issues. It is further

**ORDERED** that the Motion to Dismiss or Motion for Judgment on the Pleadings or Motion for Summary Judgment of Defendant American Postal Workers Union Local 185 [Doc. # 59] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **denied** on the arbitrariness issue and **granted** on the discrimination and bad faith issues. It is further

**ORDERED** that Plaintiff's Amended Motion for Leave to File Rebuttal to Replies of Defendants American Postal Workers Union Local 185 and Postmaster General to Plaintiff's Response to Motions for Summary Judgment [Doc. # 73] is **GRANTED**. It is further

**ORDERED** that the parties must **MEDIATE** the issue of arbitrariness, with mediation to be completed **on or before September 23, 2011**. It is further

**ORDERED** that before mediation, and **on or before September 13, 2011**, Plaintiff must provide to Defendants a list of all economic and non-economic damages he claims to have suffered as a result of Defendants' alleged arbitrariness.

SIGNED at Houston, Texas, this **2nd** day of **September, 2011**.

Nancy F. Atlas
United States District Judge